IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 07-CV-00714-WYD-MHW

GRETA CAROLUS and
JIM CAROLUS, as spouse to Greta Carolus,

      Plaintiffs,

v.

GENERAL ELECTRIC COMPANY,
GE HEALTHCARE, INC., and
GE HEALTHCARE BIO-SCIENCES CORP.,

      Defendants.

---

**AMENDED STIPULATED ORDER REGARDING FORMAT OF PRODUCTION BY DEFENDANTS** ( Docket No. 92-2 )

---

1. <u>General Format of Production</u>. Except as limited in this paragraph, all documents that originally existed in electronic form that are produced in these proceedings shall be produced in electronic image form in the manner provided herein. The parties will meet and confer regarding production of voluminous sets of hard copy documents that would potentially require significant redaction. These documents that currently exist in hard copy form may be produced for inspection, subject to the meet and confer agreements, in hard copy form as they are kept in the ordinary course of business. Defendants shall have the right to review the documents selected by Plaintiff, following an inspection and prior to their production to Plaintiff and remove and/or redact any information that is protected from production pursuant to the Stipulated Protective Order and/or any privilege. Documents that currently exist in hard copy form that are produced in these proceedings may be produced in electronic or hard copy format,

and the parties shall meet and confer regarding Plaintiff's election of the format of production of hard copy documents. For documents produced in electronic format, each document's electronic image shall convey the same information as the original document. Documents that present imaging or formatting problems shall be promptly identified and the parties shall meet and confer to attempt to resolve the problems.

2. <u>Document Image Format</u>. All production document images will be provided as single-page Tagged Image File Format ("TIFFs" or ".tiff format"). All images generated from hard copy documents shall be scanned as black and white images at 300 d.p.i. resolution and shall be saved and produced in a Group 4 compression single-page "TIFF" format and reflect, without visual degradation, the full and complete information contained on the original document. All images generated from native electronic documents shall be saved electronically (or "printed") in a Group 4 compression single-page "TIFF" image that reflects the full and complete information contained on the original document. Defendants shall produce a "load file" to accompany the images, which load file shall include information about where each document begins and ends to facilitate the use of the produced images through a document management or litigation support database system. The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software such as Summation or Concordance.

3. <u>Document Unitization</u>. Each page of a document shall be scanned into an image and if a document is more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. For documents that

contain fixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document.

4. Color. If an original document contains color, Defendants shall honor reasonable requests for either the production of an original document for inspection and copying or production of a color image of the document.

5. Duplicates. Where a single document custodian has more than one identical copy of a document (i.e., the documents are visually the same and contain the same electronic text), Defendants need only produce a single copy of that document. Where multiple document custodians each possess their own copies of an identical document, the document shall be produced once for each custodian in possession of the document, OR a report will be provided to Plaintiff indicating the Bates Number of the original document and the custodians for whom an identical copy of the document existed in their files, OR the duplicate information will be produced as a metadata field. The parties will meet and confer regarding the format for which duplicate information will be provided to Plaintiffs..

6. Bates Numbering. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable), redactions (consistent with the Stipulated Protective Order in this matter), and the Bates Number identified above. The confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

7.  **File Naming Conventions.** Each page image file shall be named with the unique Bates Number of the page of document, followed by the extension ".TIF." In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

8.  **Production Media.** Defendants shall produce documents on CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the production "wave" the documents and the Defendant on the Production Media are associated with (e.g., for GE Healthcare, Inc. "GEHC001"; "GEHC002"), as well as the volume of the material in that production wave (e.g., "-001"; "-002"). For example, if the first production wave by a Defendant comprises document images on three hard drives, Defendant shall label each hard drive in the following manner in numeric sequence: (e.g. for GE Healthcare Inc., "GEHC001-001"; "GEHC001-002"; "GEHC001-003.") Additional information that shall be identified on the physical Production Media shall include: (1) the case number of the case in which it is produced, (2) the producing party's name, and (3) the production date. The type of materials on the media (e.g., "Documents", "OCR Text", "Objective Coding", etc.) and the Bates Number range(s) of the materials on the Production Media shall also be contained on the Production Media, and where not practicable to do so may be provided in an accompanying letter.

9.  **Meta-Data and Objective Coding.** Defendants will provide objective coding information as described below with each production. Defendants may review and, where necessary, revise or redact objective coding if it contains privileged or work product information.

Nothing herein shall be construed to require Defendants to produce or provide any information that is privileged or work product information. For images generated from native electronic documents, Defendants shall provide meta-data corresponding to the fields in Exhibit A to this Order, where available. If Defendants choose to objectively code certain documents for their own respective use, then with each production of such documents, Defendants shall produce an ASCII text file, appropriately delimited, setting forth the objective coding for each document (the "Objective Coding"). The data file will include the fields and type of content set forth on Exhibit A, if available, and shall be provided in a manner suitable for importing the information in a commercially available document management or litigation support software such as Summation or Concordance. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions of paragraph 8. If Plaintiff has problems importing and using the Objective Coding for document management, the parties shall meet and confer to attempt to resolve the problems. If Defendants choose to objectively code certain documents after the production of such documents, Defendants shall provide the Objective Coding to the Plaintiff as soon as it is available to Defendants. The Objective Coding, if any, shall be provided to Plaintiffs as it was received by Defendants from the entity doing the coding. All parties reserve any arguments of what evidentiary value, if any, objective coding has. In addition, Defendants do not certify that the Objective Coding data is error free and Defendants shall not be responsible for errors, if any, in Objective Coding data.

10.   <u>OCR/Extracted Text</u>. Defendants shall produce corresponding Optical Character Recognition (OCR) text files for all hard-copy documents and any electronic documents that require redaction prior to production. For documents that exist natively in electronic format that

have not been redacted and that are produced as images, Defendants shall produce extracted text files reflecting the full text that has been electronically extracted from the original, native electronic files. The OCR/extracted text shall be provided in ASCII text format and shall be labeled and produced on Production Media in accordance with the provisions of paragraph 8. The text files will be associated with the unique Bates Number of the first page of the corresponding document followed by the extension ".txt." The OCR/extracted text files shall be provided in a manner suitable for importing the information in a commercially available document management or litigation support software such as Summation or Concordance.

11.  Search Terms.  The currently agreed upon search terms are attached hereto as Exhibit B. The parties shall meet and confer on the search terms to be used by Defendants for electronic documents to identify electronic documents that will be reviewed for possible production. During the course of the litigation, the parties may modify these terms by agreement. Documents identified by search terms may be reviewed for privilege, confidentiality, redactions and relevance or responsiveness prior to production.

12.  Format for Production.  The format of document images and objective coding described in paragraphs 2 and 9 above, and the OCR/extracted text files described in paragraph 10, shall conform with the requirements a commercially available document management or litigation support software the requesting party intends to use. The parties shall confirm this with each other in advance of the processing.

13.  Original Documents.  Defendants shall retain the original hard-copy and native source documents in their original format (however, the original hardware does not have to be kept) for all documents produced in this proceeding. Defendants shall make reasonable efforts to

maintain the original native electronic source documents in a manner so as to preserve the "metadata" associated with these electronic materials in the event review of such metadata becomes necessary. Subject to preservation of appropriate privileges and other protections of Defendants' information from production in accordance with applicable law, Defendants shall, upon reasonable request after any necessary meet and confer, make originals of any produced document available for inspection by the requesting party in the form in which such documents are kept in the ordinary course of business.

14. Production of Other Electronic Documents. This Order only applies to the production of emails (and any associated attachments), word processing documents, spreadsheets, presentations, and imaged documents (in any format). The parties shall meet and confer to agree on the form of any production of electronic documents other than the foregoing.

15. Use of Documents. When documents produced in accordance with this Order are used in any Proceeding herein, including depositions, hearings, or trial, the image copy of documents as described in Paragraphs 2 and 8 herein shall be the copy used. OCR or extracted text shall not be used in any Proceeding as a substitute for the image of any document.

16. Preservation of Documents. Defendants, respectively, shall secure the hard drives (or make forensic image copies of the non-executable files on hard drives) of all computers (including laptop or desktop computers) used by Defendants' key employees related to this litigation who are currently employed by Defendants, before the reformatting, redeployment, or disposal of such hard drives. Defendants will further make copies of server email accounts and network share data, if any, for these key employees related to this litigation. This provision will not impact the rights of either party concerning future preservation arguments, however, the

parties shall meet and confer if any such issue arises. Defendants are not required to suspend their normal rotation or reuse of back-up tapes. Notwithstanding any other provisions of this Order, as of the date of this Order, persons may generate documents in the future without preserving dictation, drafts, interim versions, or other temporary compilations of information if such documents would not have been preserved in the ordinary course of business, unless drafts and interim versions are circulated beyond the author and clerical staff. Plaintiff reserves her rights on all issues set forth in this paragraph if she learns information in discovery that necessitates further discussions and/or relief on this issue. However, the parties shall meet and confer if any such issue arises. This order pertains only to documents containing information that may be relevant to, or may lead to the discovery of information relevant to this litigation.

17.  Privilege Logs. The parties will produce privilege logs in Excel format or a similar electronic format that allows text searching and organization of data. A party will produce a separate privilege log for custodian/department within 60 days after the production of a custodian/department's documents for which privilege is asserted to apply is substantially complete, and within the same time period following any subsequent or rolling productions. The production of a privilege log for a custodian/department will be not less than 30 days prior to a custodian's deposition.

18.  Costs of Production. The costs of production will be resolved by a future, separate, order or agreement of the parties.

19.  Inadvertent Production of Documents. Inadvertent production of documents (hereinafter "Inadvertently Produced Documents") subject to work-product immunity, the attorney-client privilege, or other legal privilege protecting information from discovery shall not

constitute a waiver of the immunity or privilege, provided that the producing party shall notify the receiving party in writing within a reasonable period of time from the discovery of the inadvertent production. If such notification is made, such Inadvertently Produced Documents and all copies thereof shall, upon request, be returned to the producing party, all notes or other work product of the receiving party reflecting the contents of such materials shall be destroyed, and such returned or destroyed material shall be deleted from any litigation-support or other database. If the receiving party elects to file a motion as set forth below, the receiving party, subject to the requirements below, may retain possession of the Inadvertently Produced Documents as well as any notes or other work product of the receiving party reflecting the contents of such materials pending the resolution by the court of the motion below. If the receiving party's motion is denied, the receiving party shall promptly comply with the immediately preceding provisions of this paragraph. No use shall be made of such Inadvertently Produced Documents during depositions or at trial, nor shall they be disclosed to anyone who was not given access to them prior to the request to return or destroy them. The party receiving such Inadvertently Produced Documents may, after receipt of the producing party's notice of inadvertent production, move the Court to dispute the claim of privilege or immunity, but the motion shall not assert as a ground therefore the fact or circumstances of the inadvertent production.

IT IS SO ORDERED.

Signed this 12TH day of February, 2008

_____
Judge

MICHAEL J. WATANABE
U.S. MAGISTRATE JUDGE
DISTRICT OF COLORADO

APPROVED FOR ENTRY:

Burg Simpson Eldredge Hersh & Jardine

By: s/ Seth Alan Katz

    Attorneys for Plaintiff

Davis Graham & Stubbs LLP

By: s/ Charles L. Casteel

    Attorneys for Defendants

DLA Piper LLP

By: s/ Amy Weinfeld Schulman

    Attorneys for Defendants

## EXHIBIT A

*Pursuant to paragraph 9 of this Stipulated Order relating to the format of Defendants'* document production, if Defendants choose to objectively code certain documents for their own use, then with each production of such documents, Defendants shall produce the following Objective Coding in the ASCII text file that accompanies the document production. If Defendants choose to objectively code certain documents after the production of such documents, Defendants shall provide the following Objective Coding as soon as it is available to Defendants. For images generated from native electronic documents, Defendants shall provide meta-data corresponding to the following fields, where available.

| **Coding Field** | **Description** |
| --- | --- |
| BegBates; EndBates | The beginning and ending Bates numbers for the document at issue. |
| BegAttach; EndAttach | The beginning and ending Bates numbers of the collection to which the parent document and any attachments thereto are associated (i.e., for an email that is bates stamped ABC0001 - ABC0002, with two attachments bates stamped ABC0003 - ABC0004 and ABC0005 - ABC0008, the BegAttach and EndAttach for all three documents would be ABC0001 - ABC0008). |
| DocCreate | The Microsoft® Office generated metadata reflecting the date the document was created. |
| DocDate | The last modified date of the document, formatted as follows: MM/DD/YYYY, with leading zeros as appropriate (e.g., 03/01/2006). For emails, the field will reflect the date the email was sent; for other documents, the field will reflect the last date on which the document was last modified. |
| DocType | The type of document (e.g., email, Microsoft Word 2000, Microsoft Excel, etc.). |
| Document Title | The title of the document, if any. |
| AuthorName | The author(s) of a document. |

| **Coding Field** | **Description** |
|---|---|
| To | The recipient(s) of a document. |
| CC | The person(s) who received copies of a document. |
| BCC | The person(s) who received blind copies of a document. |
| Custodian | The name of the individual whose electronic or hard-copy custodial file contained the document at issue. |
| Importance | For Outlook emails, "High," "Low," or "Normal." |
| Sensitivity | For Outlook emails, "Normal," "Private," "Personal," or "Confidential." |
| Pages | The number of pages in a document. |
| Marginalia | For hard-copy documents, yes or no indication of whether the document at issue contains handwritten notations, notes, or marginalia. |
| Redacted | Yes or no indication of whether the document at issue is redacted. |
| Confidential | Yes or no indication of whether the document at issue was designated as confidential as of the date of production. |

## EXHIBIT B

Pursuant to paragraph 11 of this **STIPULATED ORDER REGARDING FORMAT OF PRODUCTION BY DEFENDANTS,** the following search terms to be applied to electronic documents are agreed upon by the parties. By the inclusion of a search term herein, Defendants are not stipulating that any term is necessarily relevant to any issue in this matter. Additionally, a document is not necessarily required to contain one of these terms in order to be responsive to Plaintiffs' discovery demands. The parties may modify these terms by agreement.

1. 33,218
2. 22-123
3. 22-066
4. $\beta$2-microglobulin amyloidosis
5. Borreliosis
6. Calciphylaxis
7. Caldiamide
8. Carcinoid syndrome
9. Chelat*
10. Circulating fibrocytes
11. Colorimetric
12. Contrast agent
13. Cowper
14. Dechelation
15. Dermal histopathology
16. Diethyl*
17. Dotarem
18. EDTA
19. Endogenous ions
20. Endogenous ligands
21. Endothelial injury
22. Eosinophil*
23. Epogen
24. erythropoietin
25. fasciitis
26. fibro*
27. Fibrosis
28. Gd*
29. GFR
30. gado*
31. Gadovist
32. Glomerular Filtration Rate

33. Grobner
34. Half-life
35. Hypocalc*
36. Ionic
37. Kidney
38. Kinetic
39. Ligand
40. linear
41. Log Stability Constant
42. m.r.
43. MRA
44. MRI
45. Macrovascular
46. Magnevist
47. Magnetic Resonance
48. macrocyclic
49. morphea
50. MultiHance
51. NFD
52. NSF
53. Nephrogenic
54. nonionic
55. Omni*
56. Omniscan
57. OptiMark
58. Osmolarity
59. Oscn
60. papules
61. Physicochemical properties
62. Porphyria cutanea tarda
63. PrimoVist
64. ProHance
65. Renal
66. ringed
67. Salutar
68. Sclero*
69. Selectivity
70. Skin lesions
71. Stability constant
72. Thermodynamic stability
73. Thickening
74. Thrombot*
75. Transforming Growth Factor
76. Transmetal*
77. transplant*
78. Vasovist

79. Yale